UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
:
MAT MOVIES & TELEVISION PRODUCTIONS   :
GMBH & CO. PROJECT IV KG,             :
                                      :
                    Plaintiff,        :
                                      :     10 Civ. 1405 (SHS)
         -against-                    :
                                      :     OPINION
RHI ENTERTAINMENT DISTRIBUTION, LLC,  :
                                      :
                    Defendant.        :
                                      :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

Plaintiff MAT Movies & Television Productions GmbH & Co. Project IV KG ("MAT") brings this action against RHI Entertainment Distribution, LLC ("RHI") for breach of contract arising from RHI's failure to pay amounts owed to MAT pursuant to a Settlement Agreement entered into between those two entities. Defendant has moved to dismiss the complaint, or, in the alternative, stay the action pending arbitration, on the ground that the parties have obligated themselves to arbitrate their dispute. Because the parties have not agreed to arbitrate this dispute, RHI's motion is denied.

**I.    BACKGROUND**

MAT is a limited partnership domiciled in Germany whose partners are all citizens of foreign countries. (Compl. ¶ 2.) RHI is a Delaware limited liability company whose principal place of business is in New York and whose members are citizens of Delaware. Because the parties are diverse and the amount in controversy exceeds $75,000, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

1

MAT and RHI are parties to an agreement dated June 24, 2002, for RHI to distribute certain made-for-television movies produced by MAT ("Distribution Agreement"). (Decl. of Henry S. Hoberman dated Apr. 15, 2010, Ex. A.)  In exchange for the right to distribute the movies, RHI agreed to pay MAT certain payments, including minimum guarantee payments and a specified portion of RHI's gross receipts from the MAT movies. (*Id.* ¶ 4.)  MAT and RHI also agreed to arbitrate "any dispute between the parties hereto with respect to this Agreement," except for disputes over minimum guarantee payments. (*Id.* ¶ 36.)

During the course of their contractual relationship, disputes arose over the amount due MAT under their contract. On September 25, 2009, the parties entered a Settlement Agreement to resolve their disputes over how much RHI owed MAT pursuant to the Distribution Agreement for license fees during the 2008 calendar year. (Settlement Agreement and Release ("Settlement Agreement"), Hoberman Decl., Ex. B.)  In addition to a mutual, general release concerning disputes through December 31, 2008, this Settlement Agreement provides for RHI to pay MAT $6,036,983, (*id.* ¶ 1), an amount subject to revision after PricewaterhouseCoopers conducted an audit of the records, (*id.* ¶ 2). The revised amount was known as the Audit Amount. (*Id.*).  RHI agreed to pay MAT the $6,036,983—or if different, the Audit Amount—plus interest—in various installments. (*Id.* ¶ 4.)  The Settlement Agreement specifically provides that "in the event that either Party disputes the Audit Amount, such Party may commence an arbitration proceeding in accordance with Section 36(a) of the Distribution Agreement." (*Id.* ¶ 2.)  The Settlement Agreement did not provide for arbitration of any issue except to the extent that "either party disputes the Audit Amount." (*Id.*)

MAT now brings this action for breach of the Settlement Agreement, alleging that RHI failed to make various installment payments due on the Audit Amount. (Compl. ¶¶ 15-20.)

Following each missed payment, MAT notified RHI that the failure to pay constituted an "Event of Default" under the Settlement Agreement. (*Id.* ¶¶ 21-23.) MAT is not disputing the Audit Amount itself. Because RHI allegedly has not cured its default, (*id.* ¶24), nor allegedly made any payments for that matter, (*id.* ¶¶ 27-28), MAT contends that the principal amount—which equals the Audit Amount of $6,991,914—should be accelerated pursuant to Paragraph 5(b) of the Settlement Agreement, (*id.* ¶¶ 10, 25). Accordingly, plaintiff seeks damages of $6,991,914, plus interest, fees, and costs.

Defendant has moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim, or, in the alternative, to stay the action pursuant to section 3 of the Federal Arbitration Act, all on the ground that the Distribution Agreement's broad arbitration clause mandates arbitration. Plaintiff responds that this dispute is brought for breach of the Settlement Agreement and therefore is governed by the Settlement Agreement, not the Distribution Agreement; only disputes concerning the Audit Amount are arbitrable under the Settlement Agreement; and this is not a dispute concerning the Audit Amount. Plaintiff has the better argument.

## II.   DISCUSSION

### A.   Legal Standard

The Federal Arbitration Act ("FAA") provides that a federal court "shall" stay an action pending arbitration in any suit involving "any issue referable to arbitration" pursuant to a written arbitration agreement. 9 U.S.C. § 3.[1] In determining whether a dispute is subject to arbitration, a court must first decide "(1) whether there exists a valid agreement to arbitrate at all under the

---

[1] Although section 3 of the FAA requires a federal court to stay an action to resolve a dispute subject to an arbitration agreement, courts have the discretion to dismiss—rather than stay—an action when all issues are arbitrable. *See Milgram v. Backroads, Inc.*, 142 F. Supp. 2d 471, 476 (S.D.N.Y. 2001); *Eastern Fish Comp. v. South Pacific Shipping Co.*, 105 F. Supp. 2d 234, 242 (S.D.N.Y. 2000); *Berger v. Cantor Fitzgerald Sec.*, 967 F. Supp. 91, 96 (S.D.N.Y. 1997).

contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (quoting *National Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996)); *see also Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 75 (2d Cir. 1998). To determine whether the parties in fact have agreed to arbitrate, courts generally look to state contract law. *See Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 48 (2d Cir. 2000). Because the Distribution Agreement is governed by New York law, (*see* Distribution Agreement ¶ 35), and the parties' briefs rely on New York law, *see Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989), this Court will apply New York law.

In deciding RHI's motion to dismiss the complaint or to stay the action pending arbitration, this Court is also guided by a "federal policy [that] strongly favors arbitration as an alternative dispute resolution process." *David L. Threlkeld & Co. v. Metallgesellschaft, Ltd.*, 923 F.2d 245, 248 (2d Cir. 1991) (citing *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) and *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987)). Where there is a question as to whether claims are arbitrable, federal arbitration policy requires that "any doubts . . . be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Louis Dreyfus Negoce, S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 223 (2d Cir. 2001).

  B. <u>Application of the Standard</u>

As set forth above, the Distribution Agreement—which established the parties' contractual relationship back in 2002—contains a broad arbitration provision covering "any

4

dispute between the parties hereto with respect to this Agreement."[2] (Distribution Agreement ¶ 36).  The later Settlement Agreement provides for a narrower set of arbitrable issues—namely, only disputes over the Audit Amount determined by PricewaterhouseCooopers.  (Settlement Agreement ¶ 2.)  The parties have therefore undoubtedly agreed to arbitrate certain disputes.  The next question before the Court, then, is whether the particular dispute that MAT seeks to have resolved in this litigation falls within the scope of the parties' agreements to arbitrate.

Plaintiff's complaint alleges breach of the Settlement Agreement.  (Compl. ¶¶ 1, 32.)  Unlike the 2002 Distribution Agreement, the 2009 Settlement Agreement does not contain a general dispute resolution clause.  The arbitration clause in the Settlement Agreement is invoked only if "either Party disputes the Audit Amount."  (Settlement Agreement ¶ 2.)  However, in this action neither party disputes the Audit Amount or even suggests that plaintiff's claim falls within the Settlement Agreement's narrow arbitration clause.  Instead, this motion turns on whether the broader arbitration clause in the earlier Distribution Agreement applies to a claim alleging breach of the later Settlement Agreement.

The Distribution Agreement's arbitration provision covers "any dispute between the parties hereto with respect to this Agreement."  (Distribution Agreement ¶ 36(a).)  Defendant contends that the parties' settlement of claims—which arose in the first instance from the substantive terms of the Distribution Agreement—does not nullify the Distribution Agreement's distinct procedural choice for dispute resolution.  According to defendant, because the Settlement Agreement must be read together with the Distribution Agreement governing the parties' overall relationship, the Distribution Agreement's broad arbitration clause covers all disputes arising under the Settlement Agreement.  Defendant's argument, however, must fail.

---

[2] The Distribution Agreement also provided that disputes concerning the "Minimum Guarantee Payments" were not to be arbitrated, (*see* Distribution Agreement ¶¶ 36(a), 4(a)), but those payments are not at issue here.

Not only is the broad dispute resolution clause missing from the Settlement Agreement, but the Settlement Agreement instead has a much narrower arbitration clause. In construing the scope of an arbitration clause, courts "must be careful to carry out the specific and limited intent of the parties." *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988). Moreover, "[u]nder New York law an interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.'" *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (citation omitted). If the broad arbitration provision in the Distribution Agreement governs all disputes arising out of the later Settlement Agreement, then the narrow arbitration provision in the Settlement Agreement would be superfluous. *See also Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 10 (1st Cir. 2004) (finding that inclusion of a different, narrower dispute resolution process in the later agreement "would be redundant . . . if the same matter were covered by the general arbitration clause in the [earlier] agreement"). The specific agreement to arbitrate disputes over the Audit Amount suggests that the parties did not intend to arbitrate other disputes arising under the Settlement Agreement. *Id.*; *see also Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46, 133 N.E.2d 688 (1956) (citing 1 Restatement, Contracts § 236(c) ("Where there is an inconsistency between general provisions and specific provisions, the specific provisions ordinarily qualify the meaning of the general provisions.")).

RHI correctly points out that the Settlement Agreement makes numerous references to the Distribution Agreement. Indeed, the Settlement Agreement's recitals provide context for the parties' relationship: Paragraph 2 preserves the Distribution Agreement's dispute resolution system but only for disputes over the Audit Amount, and Paragraph 6 specifies that the mutual release does not extend to obligations under the Distribution Agreement "for all matters arising

6

on or after January 1, 2009." The Settlement Agreement goes on to state in Paragraph 10 that "[t]his Agreement and the agreements listed in Paragraph 6 above [including the Distribution Agreement], contain the complete understandings and agreement between the Parties in relation to the subject matter hereof and supersedes all prior written or oral understandings or agreements between them relating to the subject matter hereof." (Settlement Agreement ¶ 10.)

Contrary to RHI's assertion, Paragraph 10 does not incorporate the entire Distribution Agreement by reference. Rather, this standard merger clause language prevents the earlier Distribution Agreement from being merged into the later Settlement Agreement and thereby assures that parts of the Distribution Agreement remain in effect—e.g., "for all matters arising on or after January 1, 2009," (*id.* ¶ 6), or for resolution of Audit Amount disputes, (*id.* ¶ 2). *See Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 665 (7th Cir. 2002) (refusing to apply one contract's arbitration provision to another contract whose merger clause referred to the contract with the arbitration provision) ("[A]s is the case in all merger clauses, the reference to . . . other documents [including the contract with the arbitration clause] simply assures the continued vitality of those documents and prevents their being merged into the [subsequent] Agreement."). The merger clause, moreover, protects the parties against a claim that some other writing or oral statement—aside from the contracts explicitly listed—forms part of their agreement. *See Rosen v. Mega Blocks, Inc.*, 2007 WL 1958968, at *5 (S.D.N.Y. 2007) ("[T]he purpose of a merger clause is to require the full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to alter, vary or contradict the terms of the writing.") (citing *Jarecki v. Shung Moo Louie*, 95 N.Y.2d 665, 745 N.E.2d 1006 (2001))).

As a result of this merger clause in Paragraph 10 of the Settlement Agreement, the Distribution Agreement remains part of the "complete understandings and agreement between

the parties." But to the extent that provisions in the Distribution and Settlement Agreements are inconsistent, mere reference to the Distribution Agreement in the Settlement Agreement's merger clause does not suggest that the parties intended the Distribution Agreement to prevail.

In all the cases defendant relies on for the unexceptionable proposition that an earlier contract's arbitration clause remains enforceable despite execution of a later agreement, the later agreement was silent with respect to dispute resolution. *See Consumer Concepts, Inc. v. Mego Corp.*, 458 F. Supp. 543, 545 (S.D.N.Y. 1978) (broad arbitration clause of general license agreement applied to alleged breach of subsequent contract that lacked arbitration clause, where general license agreement established basis for continuing relationship and subsequent contract was entered into pursuant to that relationship); *Schlaifer v. Sedlow*, 51 N.Y.2d 181, 184-85, 412 N.E.2d 1294 (1980) (arbitration clause in earlier agreement enforced despite subsequent execution of general release that did not mention arbitration); *Matter of Fener Realty Co.*, 182 A.D.2d 436, 582 N.Y.S.2d 163 (App. Div. 1st Dep't 1992) (same). By contrast, the Settlement Agreement here specifically contemplates arbitration for a particular type of dispute.

Nonetheless, where a claim alleging breach of one contract requires construction of another contract with an arbitration clause or implicates the parties' rights or obligations under the other contract, that claim may be governed by the other contract's arbitration clause. *See Louis Dreyfus*, 252 F.3d at 228-29; *Collins & Aikman*, 58 F.3d 16, 23 (2d Cir. 1995); *Mirant Ams. Energy Pktg. LP v. 1st Rochdale Coop. Group Ltd.*, 363 F. Supp. 2d 679, 682 (S.D.N.Y. 2005). In this case, the underlying claim relates to whether or not RHI owes MAT money pursuant to the Settlement Agreement, and if so, how much. Construction of the Distribution Agreement is not required to resolve the parties' dispute, and their rights or obligations under the Distribution Agreement are not implicated. Except for providing context to the underlying

dispute, and for deciding the issue RHI raises in this motion, the Distribution Agreement plays no role. Accordingly, the Distribution Agreement's arbitration clause covering "any dispute" arising under that agreement does not apply here. *See id.*

Even though federal policy favors arbitration, a court cannot require arbitration absent a valid agreement to arbitrate a particular dispute. *Louis Dreyfus*, 252 F.3d at 224; *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1773-74 (2010) ("Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts . . . must 'give effect to the contractual rights and expectations of the parties . . . [and] as with any other contract, the parties' intentions control.'" (internal citations omitted)). Because neither the Distribution Agreement's arbitration clause, nor the Settlement Agreement's arbitration clause covers this action, defendant's motion to dismiss the complaint or stay the action pending arbitration is denied.

## III. CONCLUSION

For the reasons set forth above, defendant's motion to dismiss the complaint or, in the alternative, to stay the action pending arbitration, is denied.

Dated: New York, New York
       November 2, 2010

Sidney H. Stein, U.S.D.J.